## CITY BANK *v.* YOUNG.

Where the adverse party, at a caption of depositions which was after the Tuesday preceding the sitting of the court, objected only upon the ground that the taking was too late, it was held that he could not, at the trial, object that the notice did not state that the witness was bound to sea.

An "assistant judge of a county court" in Vermont has authority, under our statute, to take depositions, whether he has power by the Vermont laws or not.

A witness who testifies to circumstances tending to show that he was discharged as surety by the creditor, can not be contradicted by proof that on another occasion he had expressed the opinion that he was still liable.

Where a creditor disposes of personal property mortgaged to him by the principal as collateral security, he is responsible to the surety for ordinary care and prudence in the sale, and the application of the proceeds.

ASSUMPSIT upon a promissory note, signed by *F*. H. Lyford, as principal, and by the defendant, J. C. Lyford, and others, as sureties, payable to the plaintiffs. It appeared that the plaintiffs, when they took the note, knew that F. H. Lyford was principal, and that the other signers were sureties upon it. After the note was given to the plaintiffs, F. H. Lyford executed to the plaintiffs, without

their request, a mortgage of certain personal property to secure the payment of the note in suit, and two other notes, signed by F. H. Lyford, and certain sureties, which together were of an amount equal to the note in suit. This mortgage was accepted by the plaintiffs. Soon after the note fell due, which was January 8, 1860, F. H. Lyford sold the mortgaged property; and the defendant introduced evidence tending to show that the sale was made by him as agent for the plaintiffs, either by virtue of a prior authority from, or of a subsequent ratification by the plaintiffs, and also tending to show the circumstances of the sale, and what became of the proceeds. Forty dollars of the money received by F. H. Lyford from the sale was paid into the bank by him. There was evidence, also, tending to show that at the time of the sale F. H. Lyford was insolvent.

The defendant introduced the deposition of J. C. Lyford, taken after the Tuesday next preceding the Tuesday on which the term commenced. The plaintiffs appeared at the caption, and objected on this ground. The magistrate certified as the cause of the caption, that the deponent was bound to sea, and was about to leave the state, and not return before the time of trial. The notice to the plaintiffs was, that the deposition of J. C. Lyford, who was about to leave the state and not return before the time of trial of the action, would be taken, &c. The plaintiffs objected to the deposition, because it was taken after the Tuesday next preceding the Tuesday on which this term commenced, and, also, because the notice did not state that J. C. Lyford was bound to sea. The defendant laid evidence before the court, satisfying the court that at the time of the caption the deponent was a member of the 7th New-Hampshire regiment of volunteers, which was then expected very shortly to leave the State, under orders expected from the War Department of the United States; also, that a few days after the caption, the regiment was expected to leave for Ship Island, in the Gulf of Mexico, as a part of Maj. Gen. Butler's expedition, and at the time of trial the witness had gone with the regiment to the Tortugas, by sea; and the court admitted the deposition.

The defendant introduced the deposition of a witness taken in Orange county, Vermont. The caption purported to be signed by "E. L. Tracy, assistant judge of the county court in the county of Orange," to which the plaintiffs objected, as not taken before any one authorized to take depositions. But the court overruled the objection.

J. C. Lyford, a witness for the defendant, testified that very soon after the note became due, and when he received a notice from the plaintiffs that it had not been paid, he met the plaintiffs' cashier, and told him that he had received a notice that F. H. Lyford had not paid the note, and asked if he, the witness, should notify the other sureties; that the cashier replied, "No; Mr. Young has been notified, and you need n't trouble yourself about it at all; it is all understood between F. H. Lyford and us;" that he replied that he understood the plaintiffs had the mortgage, and desired them to take possession of the mortgaged property, and make what they

could out of it. That the cashier replied, "It is all right, and you will never be troubled." That the cashier also said, "F. H. Lyford has got it all fixed up, and we understand it all." With a view of contradicting J. C. Lyford's testimony as to these statements of the cashier, the plaintiffs offered to show, that in February or March, 1860, and subsequent to the alleged conversation, J. C. Lyford told a witness that he was obliged to sell his house to pay this note, and also said that he was liable to pay the note. The defendant objected, and the court ruled that the evidence was incompetent for this purpose.

The court, among other things, instructed the jury, that if the plaintiffs made F. H. Lyford their agent to sell the mortgaged property, either by conferring a prior authority upon him, or by subsequently ratifying his sale of it, and if the plaintiffs were guilty of any want of ordinary care and prudence in the sale of the property, or in securing the proceeds of it; and if, in consequence of such want of ordinary care and prudence, there was a loss upon the security, the plaintiffs must lose one half the amount of such loss upon this note—that is, that the defendant's liability upon the note would, thereby, be extinguished to the extent of one half the amount of such loss.

To these rulings and instructions the plaintiffs excepted, and the jury having returned a verdict for the defendant, the plaintiffs moved to set the same aside, and for a new trial.

*W. C. & S. G. Clarke*, for the plaintiffs.

*Smith*, and *Sawyer & Stevens*, for the defendant.

BELLOWS, J. The deposition of J. C. Lyford was properly admitted. The cause of the caption certified by the magistrate, that the witness was bound to sea, was not disproved by the finding of the court, and must therefore be taken to be true. On the contrary, the proof that he actually did go to sea, tends to confirm the certificate.

At the caption the plaintiff objected, upon the ground that the time was after the Tuesday preceding the term; but did not object to the notice, and they must be deemed to have waived the exception which is now taken to it.

The objection to the Vermont deposition can not be sustained. Whether, by the laws of Vermont, a judge of the county court had power to take depositions or not, is immaterial, because, by our own law, "any judge" in any other State is expressly empowered to take depositions to be used in our courts, and there is nothing in our legislation, or in the nature of the case, that would limit the authority to a judge who was authorized in his own State to take depositions. On the contrary, the provision in our own statute was but an extension of a well settled practice by which the courts of one jurisdiction obtained the testimony of a witness resident in another, through an application to the courts of that country and the taking of the testimony by one of its judges. 1 Greenl. Ev. sec. 320. Nor

does the qualification arising from the term "assistant" indicate an officer not embraced by the term "any judge," as used in our own statute.

It appeared that the witness' (Lyford's) testimony tended to prove that the plaintiffs' cashier represented to him that the note upon which he was surety had been arranged by the principal, and its payment provided for, and that the witness need not trouble himself farther about it; and to contradict him on this point the plaintiff offered to prove that afterward he said he was obliged to sell his house to pay this note and that he was liable to pay it; but this was rejected as incompetent, and we think rightfully. What was offered to contradict the witness, was in substance but the expression of an opinion that he was still liable on the note; and upon that ground is inadmissible. *Nute* v. *Nute*, 41 N. H. 60, 71; *Gerrish* v. *Pike*, 36 N. H. 510; *Elton* v. *Larkin*, 5 C. & P. 385; 2 C. & H's Phill. Ev. 727, 772; *Holmes* v. *Anderson*, 18 Barb. 420. There are, doubtless, cases where the opinion of a witness, as expressed on another occasion, may be received to contradict him, as when the testimony designed to be contradicted is but the opinion of an expert; *Daniels* v. *Conrad*, 4 Leigh 401; but in general the opinion of the witness is not relevant or material to the issue, and his statement in respect to it can not therefore be contradicted. A different doctrine, it is quite easy to see, would greatly enlarge the field of inquiry into opinions of the witnesses, both on the stand and elsewhere, upon the assumption that they would bear more or less remotely upon the credit due to his statement of facts; but we are satisfied that, both upon principle and authority, such inquiries ought to be excluded.

In *Hall* v. *Young*, 37 N. H. 134, it was decided that to render a statement of a witness out of court, admissible to contradict his testimony, it must conflict with some fact stated in it, or with its general drift; but his statement that he could tell " that in three words that would turn the case either way," was not admissible.

The remaining question respects the instructions to the jury. It appeared that the bank holding the note in suit, on which the defendant was surety, afterward took a mortgage of personal property of the principal, to secure the payment of this note and another of equal amount, and that the property was afterward sold by the principal; and there was evidence tending to prove that the sale was made as the plaintiffs' agent, either by prior authority or subsequent ratification. And the question is, whether the the plaintiffs should be held to account upon this note for such loss of the proceeds of the property as was caused by want of ordinary care and prudence on their part. It is quite clear that it was the duty of the creditor to appropriate the avails of the mortgaged property to the payment of the debt, or to hold it for the benefit of the surety. *Bank* v. *Colcord*, 15 N. H. 119, and cases cited; *Currier* v. *Fellows*, 27 N. H. 366; *Watriss* v. *Peirce*, 32 N. H. 573. In *Currier* v. *Fellows*, it was decided that if the co-surety suffer the principal to dispose of the property, he must account for its value; and the same doctrine was applied to the creditor, having security of the principal, in *Baker* v.

*Briggs*, 8 Pick. 122; *Law* v. *East India Co.*, 4 Ves. 829, 824, note. In Theobald's Law of Principal and Surety (sec. 174), it is laid down that if the creditor parts with securities, or any fund which he would be entitled to apply in discharge of his debt, the surety becomes exonerated, at least to the extent of the value of, such securities; because securities, which the creditor is entitled to apply in discharge of his debt, he is bound so to apply; or to hold them as trustee, ready to be applied should the surety desire it. If, then, he intends to look to the surety for payment, it would seem that he should be bound to preserve such securities, that they may come to the surety unimpaired. 3 Kent Com. 124. It is true he is under no obligation to make efforts to obtain such securities, or even to accept them when offered, but if he choose to do so it must be regarded as a bailment for the interest of all parties, and imposing upon the creditor the obligation of ordinary care and diligence in respect to them. So it is held in respect to goods pawned or pledged. Story Bail., sec. 332, and authorities cited; 1 Smith L. C. (5th Am. Ed.) 290, 298, and cases cited. The same rule must apply to the mortgagee of goods, who can not be regarded merely as a gratuitous bailee. If, then, ordinary diligence is required in the case of a pawn, pledge, or mortgage, as between the immediate parties; and if the pawnee, pledgee, or mortgagee, must account to the principal for any loss caused by the want of such diligence, much more should he be held to account to the surety against whom the claim is one rather of strict law than otherwise. Indeed it would be absurd to hold that the surety would not be discharged by the negligence which would discharge the principal; and it would be equally absurd to contend that the duty of the creditor to use ordinary care was lessened by the fact that there was a surety. That in point of fact the diligence of the creditor is often relaxed by such a consideration may be true; but it is none the less a breach of good faith and fair dealing. If the creditor chooses to accept such securities, the law will imply that he undertakes to hold them in trust for the benefit of the parties interested, and to use ordinary diligence in the care of them, and upon payment of the debt by the surety, he is bound to transmit them unimpaired to him. If he relinquish such securities to the principal, it is well settled that he thereby exonerates the surety, at least to the extent of their value; *N. H. Savings Bank* v. *Colcord*, 15 N. H. 119, and cases cited; although in that case other security of equal value was substituted. And the same rule has been applied to the release of a lien acquired by an attachment of the property of the principal. *Springer* v. *Toothacre*, 43 Me. 381. Between this class of cases, namely, the release of securities by the direct act of the creditor, and allowing them, by want of ordinary care, to be lost or destroyed, we are unable to perceive any solid distinction. In both cases the surety may have been lulled into security, and prevented from taking the counter security that he might otherwise have required—relying, as he had a right to do, upon the creditor's holding such securities fairly and impartially.

These views are in accordance with the instructions given to the

jury in this case, and are, we think, sustained by a great weight of authority. Among them, beside those already cited, are *Hayes* v. *Ward*, 4 Johns. Ch. 123, and cases cited; *Ex Parte Meere*, 1 Coxe 63; *Hodgson* v. *Shaw*, 3 M. & K. 190; *Capel* v. *Butler*, 2 Sim. 457; *Williams* v. *Price*, 1 Sim. & St. 58; *Wolten* v. *Crockett*, 2 Port. 401, 413; *Sullivan* v. *Morrow*, 4 Ind. 425; *Russell* v. *Hester*, 10 Ala. 536; *Marshall* v. *Kirkpatrick*, 20 Penn. St. (9 Harris) 237–241; 2 Am. L. C. 342, 346, 350. Several of these cases go to the point that the creditor, having in his hands a negotiable note or bill, as collateral security, is bound to give due notice to indorsers; and this, we think, has always been understood to be the law in New-Hampshire.

There must then be

*Judgment on the verdict.*