## ATLANTIC GREYHOUND CORPORATION v. EDDINS.

### No. 5951.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1949.

Decided Nov. 10, 1949.

Ben C. Thornton, Greenville, S. C., and Nat A. Turner, Columbia, S. C. (James L. Love and E. M. Blythe, Greenville, S. C., on brief), for appellant.

A. C. Mann and W. H. Arnold, Greenville, S. C. (J. R. Mann, Greenville, S. C., and W. C. Mann, Pickens, S. C., on brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and BARKSDALE, District Judge.

BARKSDALE, District Judge.

This action, which was removed from a state court on the ground of diversity of citizenship, was instituted by Bethel M. Eddins, widow and administratrix of William Amos Eddins, against Atlantic Greyhound Corporation, to recover damages, actual and punitive, for the wrongful death of her husband under the South Carolina Death by Wrongful Act statute, 1 S.C. Code, Sec. 411 et seq. Upon the trial by the court with a jury, the court struck out plaintiff's claim for punitive damages, and submitted the case to the jury, which rendered a verdict for the plaintiff for actual damages in the sum of $40,000.00 Overruling the defendant's motions for a directed verdict, for judgment notwithstanding the verdict, or in the alternative, for a new trial, the court rendered judgment on the verdict and defendant has appealed.

The principal question in the case is whether or not there was sufficient evidence to sustain the verdict. Inasmuch as the jury rendered a verdict for the plaintiff, which has been approved by the trial court, we must take the evidence in the light most favorable to the plaintiff and resolve all conflicts of evidence in her favor. Plaintiff is entitled to the benefit of all reasonable inferences which might be drawn from the evidence. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 352; Thomas v. Atlantic Greyhound Corp., 204 S.C. 247, 29 S.E.2d 196, 198. Although the evidence was conflicting, taking it in the light most favorable to the plaintiff, the facts may be stated as follows:

Plaintiff's intestate died as the result of injuries sustained in a collision which occurred about 1:00 P.M., February 20, 1947, at a point about two miles west of Greenville on South Carolina Highway No. 13, when the Oldsmobile Sedan driven by plaintiff's intestate in a westerly direction from Greenville toward Easley, collided with the bus of the defendant, Atlantic Greyhound Corporation, driven by its employee Eudy in an easterly direction from Easley toward Greenville. Plaintiff's intestate Eddins was alone, and as the bus driver was returning from a relief mission, he had no passengers and was alone in the bus. The weather was "terrible". There was sleet or snow on the ground, and it was misting and sleeting or raining and freezing, at the time. Most of the road was covered with snow, sleet or slush. The road consisted of twenty feet of pavement, a tar and gravel shoulder of four feet on each side, and some dirt shoulder outside of the tar and gravel. From the point of the collision, the road was straight in a westerly direction approximately 1,300 feet, and in an easterly direction approximately 1,250 feet. Inasmuch as the road sloped downward from both directions, witnesses described it as "saucer-like". The grade was two degrees from the direction of Greenville and somewhat greater from the direction of Easley. The collision occurred somewhat east of the low point of the road.

Immediately prior to the accident, the Oldsmobile was traveling about twenty miles per hour, and the bus was traveling approximately thirty-five miles per hour. Neither the bus nor the automobile had chains on their wheels. When the bus came over the crest of the hill and started down grade, its back end was swaying from side to side, which a witness described as "fishtailing". This occurred two or

three times, the last time just before the collision. As the two vehicles approached each other closely, the bus was sliding sideways, with its back end across the center line of the road. When they were about twenty feet apart, Eddins undertook to drive the Oldsmobile across the road to his left in order to avoid a collision with the bus, which was sliding sideways to its left. However, the bus continued on its right, and the vehicles collided on the south side of the highway, the right front of the bus striking the right side of the Oldsmobile, the mark of the impact beginning at and above the right front wheel and extending into the right rear fender. After the collision, the bus pushed the Oldsmobile a distance of sixty-three steps along the pavement and twenty or thirty yards along the shoulder and over two guard posts some two or three feet high, before it came to rest on the shoulder of the road. The automobile was demolished, and plaintiff's intestate Eddins received injuries from which he shortly died.

The bus driver Eudy gave quite a different account of the collision. According to his testimony, his vehicle did no sliding or "fishtailing", he drove in a careful and prudent manner, he stopped his bus almost immediately after the impact, and his explanation of the cause of the collision was that Eddins, just prior to the collision, drove his Oldsmobile off the pavement to his right, which caused him to skid, and that in the effort to control his automobile, he drove it directly in the path of the bus, although the bus was proceeding, and had always proceeded, along its right-hand half of the pavement.

■ If Eudy's account of the collision was true, then the collision resulted solely from the negligence of Eddins, or, at the very least, the negligence of Eddins contributed as a proximate cause. However, we are satisfied from a careful consideration of the evidence that the court properly submitted both the issue of primary negligence on the part of the bus driver, and the issue of the contributory negligence of Eddins, to the jury, and that the jury's finding for the plaintiff on both issues was based on substantial evidence, which the jury had the right to consider as the preponderance.

■ The plaintiff's theory was that the bus driver, as he approached the point of collision, was operating his bus at an excessive rate of speed under the circumstances then and there prevailing, and that the bus was out of control. According to plaintiff's theory, just before the collision the rear end of the bus was sliding sideways to the left so as to make it appear to Eddins that a collision was inevitable if he, Eddins, continued on his right-hand side of the road. Being thus confronted with a sudden emergency, created by the negligence of defendant, plaintiff's intestate then turned his Oldsmobile to the left in the effort to avoid a collision. This decision resulted in his death, but in our opinion the question of whether or not, being confronted with a sudden emergency, Eddins exercised ordinary and reasonable care under all the circumstances, was a question for the jury. No exception was taken to the court's charge on the sudden emergency theory, and the jury by its verdict accepted plaintiff's theory.

Appellant, defendant below, raises certain other questions. One of them is the exception taken by appellant to the exclusion by the court of certain evidence about an alleged contradictory statement made by plaintiff's witness J. R. Townsend. Townsend testified about facts which he observed when he came to the scene of the accident about half an hour after the collision, and again, in the late afternoon. On cross-examination, he was asked if he had not told a State Highway Patrolman that, " * * * it was clearly Mr. Eddins' fault.", to which he replied, "No, Sir." On direct examination, Eudy, the bus driver, testified that Townsend did tell the patrolman that, " * * * it looked like it was Mr. Eddins' fault." When the patrolman was on the witness stand, the court declined to permit him to testify that J. R. Townsend had made such a statement to him. Also the court declined to permit counsel to further question J. R. Townsend about such a statement after he had denied making it. Appellant contends that the statement which J. R. Town-

send was alleged to have made, that is, that the collision was Mr. Eddins fault, was contradictory of his factual testimony favorable to the plaintiff. It is to be noted, however, that if the statement was made at all, it was made during Mr. Townsend's investigation of the accident a half hour after its occurrence, and his testimony was that he did not discover a scar or indentation in the pavement which he believed to be the point of impact, sixty-three steps from the point where the vehicles came to rest, until his afternoon visit.

The general rule on the question of the admissibility of such evidence, as stated in 58 Am.Jur. 419, is as follows: "Sec. 768. Prior Expressions of Opinion.—While it is an established rule that for purposes of impeachment a witness may be interrogated as to his prior statements made in or out of court respecting matters of fact, it is an equally settled rule, as announced by the weight of juristic authority, that a non-expert witness who testifies as to facts cannot be impeached or discredited by his prior contradictory expressions of opinion given by him either by way of testimony or by way of statements made out of court. In other words, the statement of the witness upon which he can be impeached must not only relate to the issue but must be a matter of fact and not merely a former opinion of the witness in relation to the matter in issue, inconsistent with a different opinion which may seem warranted by his testimony or the facts to which he testified. The reason for the rule is that in matters of opinion men are likely to differ materially and such difference of opinion does not tend to affect the character, credibility, or veracity of one who may have given expression to conflicting opinions at different times or stages of an investigation. The rule has been applied to exclude conflicting opinions of a witness as to various matters in civil cases, such as expressions of opinion as to liability on negotiable paper, the party at fault in an accident, the parentage of a child, and other matters * * *."

No decision of a South Carolina Court has been cited to us, but numerous cases on this subject are collected in annotations appearing in 66 A.L.R. 289, and 158 A.L.R. 820. These cases indicate considerable diversity of opinion on the question. In some cases, testimony as to inconsistent opinions has been excluded because going to the "ultimate issues" involved in the trial of the case. Yessler v. Dodson, Tex. Civ.App., 104 S.W.2d 95; Wagnon v. Brown, 169 Okl. 292, 36 P.2d 723; Schneiderman v. Sesanstein, 121 Ohio St. 80, 167 N.E. 158, 64 A.L.R. 981. In other cases, such statements have been excluded because of the general rule against the admissibility of opinion evidence. State v. Brown, 104 W.Va. 93, 138 S.E. 664; City Bank v. Young, 43 N.H. 457. Other cases have permitted evidence of inconsistent opinions for the purposes of impeachment. The notewriter says, 158 A.L.R. 823: "The tendency to a more liberal view of the question under consideration is reflected by the later cases, which seem to favor the proposition that a prior inconsistent statement is admissible to impeach a witness testifying as to facts, although it involves a conclusion, provided it is shown to be sufficiently related to the subject matter in point of substance and time to indicate that it must necessarily have some factual basis, and the inconsistency of the two positions of the witness is made clearly apparent."

Professor Wigmore has this to say on the subject (3 Wigmore on Evidence, 3d ed., par. 1041, p. 729):

"*Opinion as Inconsistent.* A common difficulty is to determine whether some broad assertion, offered in contradiction, really assumes or implies anything specifically inconsistent with the primary assertion.

"The usual case of this kind is that of a *general statement upon the merits of the controversy,* which is now offered against a witness who has testified to a specific matter. Thus, A testifies for the prosecution that he saw the defendant near the scene of the alleged arson; it is offered to show that he has elsewhere declared that he is sure that the defendant is innocent; is this admissible?

"The usual answer of some Courts is that the declaration should be excluded because it is mere opinion (*post,* Sec. 1918). This is unsound, (1) because the declaration is not offered as testimony (*ante,* Sec. 1018), and therefore the Opinion Rule has no application, and (2) because the declaration in its opinion-aspect is not concerned, and is of importance only so far as it contains by implication some contradictory assertion of fact. In short, the only proper inquiry can be, Is there within the broad statement of opinion on the general question some *implied assertion of fact* inconsistent with the other assertion made on the stand? If there is, it ought to be received, whether or not it is clothed in or associated with an expression of opinion. As a matter of precedent, the rulings vary more or less in the results reached; most of them are vain quibbles."

■ We are in accord with the view expressed by Professor Wigmore. If a witness testifies to facts, and it can be shown that when he was in possession of all the facts to which he has testified, he has made a statement of opinion *clearly in conflict* or *inconsistent* with the facts to which he has testified, such a statement would be of value to the jury in evaluating his testimony, and we can see no reason why it should not be admissible. For example, if an eyewitness to a collision between automobiles A and B at a street intersection should testify that the driver of automobile A drove into the intersection against the red light at a speed of fifty miles per hour, and it can be shown that on the day following the collision, when the witness knew as much about the accident as he ever did know, he made the statement that in his opinion the driver of automobile A was in no way at fault, the two statements would be clearly inconsistent. Evidence of such an inconsistent statement should affect the credibility of the witness, and the proper foundation having been laid, should be admitted. Whipple v. Rich, 180 Mass. 477, 63 N.E. 5; Judson v. Fielding, 227 App.Div. 430, 237 N.Y.S. 348; Leinbach v. Pickwick Greyhound Lines, 135 Kan. 40, 10 P.2d 33; Ritchie

v. Pittman, 144 Or. 228, 24 P.2d 328; Rockport Coal Co. v. Barnard, 210 Ky. 5, 273 S.W. 533.

■ However, we find no error in the ruling of the district court in the instant case. The situation is somewhat peculiar. The court permitted the witness Townsend, on cross-examination, to be asked if he did not express the opinion alleged to be inconsistent, and permitted him to answer that he had not. Later, the witness Eudy was permitted to testify that Townsend had expressed such an opinion, but the witness, Highway Patrolman Townsend, was not permitted to testify about J. R. Townsend's expression of opinion. We hold that even if the court had excluded all testimony in regard to the expression of opinion, such action would have been proper for the reason that the expression of opinion took place, if at all, on the occasion of J. R. Townsend's first visit to the scene of the collision about a half an hour after it had occurred, and it appears from his testimony that he was not then in possession of very material facts, of which he learned on the occasion of his second visit to the scene of the accident in the late afternoon. Hence, the expression of an opinion made when in possession of only part of the facts, would not be inconsistent with his testimony as to all the facts which he had learned during both visits.

Certainly it would seem that the exclusion of further evidence on the matter was within the discretion of the trial judge. Hamilton v. United States, 5 Cir., 73 2d 357, 358; Mutual Life Insurance Co. v. Frost, 1 Cir., 164 F.2d 542, 547.

■■ Appellant also took exception to the refusal of the trial court to permit appellant's counsel to use certain photographs which had not then been introduced or identified, in the cross-examination of plaintiff's witnesses, and the court's refusal to permit the introduction of such photographs during the presentation of plaintiff's case. However, it appears that after these photographs had been introduced in evidence, appellant's counsel were afforded the opportunity to recall plaintiff's wit-

nesses and use these photographs in their further cross-examination. Counsel declined to avail themselves of this opportunity. Clearly appellant was not prejudiced. Direction of the orderly presentation of evidence is in the discretion of the trial court. Farley v. Norfolk & Western Railway Company, 4 Cir., 14 F.2d 93, 97; Kimball Laundry Co. v. United States, 8 Cir., 166 F.2d 856, 862.

Neither do we find any merit in appellant's contention that it was prejudiced by the fact that the district judge interrogated one of its witnesses. The district judge had the right to interrogate witnesses, and we find nothing in the questions and answers to indicate anything improper. Norwood v. Great American Indemnity Co., 3 Cir., 146 F.2d 797, 801.

It is therefore our conclusion that the defendant had a fair trial, and that there is no merit in its assignments of error. It follows that the judgment of the court below is

Affirmed.