# Carr v. Commonwealth.

April 23, 1948.

Richard R. Bryan and Roy N. Vance for appellant.

A. E. Funk, Attorney General, and William F. Simpson, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Upon trial for the offense of malicious shooting and wounding with intent to kill, appellant, Ocran Carr, was convicted and his punishment fixed at two years confinement in the penitentiary. He appeals.

The appellant and the victim of the shooting were husband and wife although they were not living together. They were married on the 24th day of June, 1946, and were separated on the 2nd day of November, 1946. The shooting occurred on the night of April 10, 1947, sometime between 9:15 and 9:30 P. M. The wife, Lottie Carr, had been to a neighbor's house for choir practice, at the conclusion of which she, in company with her cousin, Mattie Patterson, and Dorothy Fly, left for home. They were proceeding down the middle of the street when three shots were fired in rapid succession, all of them hitting Lottie Carr. Immediately thereafter a man was seen running down the street, identified by

Lottie Carr as Ocran Carr and by others as just "the bulk of a man." The night was dark and it was raining. The testimony is that there was no light in this block but that there was one on the next corner and the man was running toward the light.

Another witness, Lonzo Tolbert, who had gone for his wife, who was also at the choir practice, testified that he was standing in the front of his car when the three women left and proceeded down the street, and that soon after they had passed he heard three shots in rapid succession and ran to the corner of the street where he saw also "the bulk of a man" running down the street toward the light.

The Commonwealth also introduced testimony of threats by the appellant against Lottie Carr. Lottie said that Ocran had forced her to go to his home at the point of a gun and had told her on one occasion that he would kill her.

Georgia Thorpe, sister of Lottie Carr, testified that only a few nights before the shooting appellant told her he was going to kill her sister, Lottie. This was the sum total of the evidence for the Commonwealth.

The defendant denied having made any threats and undertook to prove an alibi. He proved by at least 7 witnesses of his whereabouts from 8 o'clock until 11 o'clock. The jury chose to believe the witnesses of the Commonwealth and disregarded the testimony for the defendant.

Appellant is here insisting on two grounds for reversal: (1) Admission of allegedly incompetent testimony, and (2) that the verdict is not supported by the evidence. Under (1) above only the testimony of Mattie Patterson is attacked. On direct examination Mattie Patterson testified that she saw "the bulk of a man running down the street." On cross examination she stated she could not definitely identify the man running down the street. Upon redirect examination she testified as follows:

"Q. You testified before the grand jury did you not? A. Yes.

"Q. To refresh your recollection, if it does so, I

will ask you if this question was asked you and you made this answer to the grand jury: 'Did you recognize him?' A. Yes from the back I could tell it was Ocran, and Lottie said 'I am shot.' A. I did say that.

"Q. What do you say now? Did you recognize Ocran? Objections—overruled—exceptions. A. The height and everything; that wasn't my first time of seeing him. I would say it was."

Counsel for appellant insists that this identification was improperly admitted in evidence. It was proper to question the witness as to her testimony before the grand jury. If there was a contradiction then the credibility and weight of her evidence was a matter for the jury. The court properly admitted this testimony.

Appellant insists that the verdict is not supported by the evidence, first because the testimony concerning the identification was meager and indefinite, and second because of the positive and definite testimony that the defendant was otherwheres and could not possibly have been at the scene of the shooting. Lottie Carr positively identified and named the appellant as the man who shot her. She was corroborated, although not as definitely and positively, by her cousin, Mattie Patterson. Lonzo Tolbert supported their testimony insofar as he said he saw the "bulk" of a man running down the street immediately after the shooting. True, the defendant produced the positive definite testimony of a number of witnesses showing he was otherwheres, but as stated above, the jury did not choose to believe their testimony. Whether the jury should believe the testimony of the witnesses for the Commonwealth or the witnesses for the defendant is a matter essentially for the jury to determine and it is not our prerogative to say, merely because the jury accepted the testimony of the prosecuting witness, and apparently was not impressed with that of the defendant, that the verdict is not supported by the evidence.

In Strange v. Commonwealth, 254 Ky. 57, 70 S. W. 2d 972, 973, we said:

"Whether the testimony of (one person) or (more than one person) should be believed was a question essentially for determination of the jury, and we cannot

say that its verdict accepting the testimony of the prosecuting witness in preference to that of appellant and another is flagrantly against the evidence. If there is any evidence affording reasonable ground on which the verdict might be sustained, it is not flagrantly against the evidence, though the conviction rests on the testimony of a single witness.''

It certainly cannot be convincingly argued that the verdict here was such as to shock the conscience of the court or was the result of prejudice on the part of the jury. Defendant was given the minimum penalty. In the case of Strong v. Commonwealth, 297 Ky. 591, 180 S. W. 2d 560, 561, we said:

''The rule is that any evidence, although slight or circumstantial which goes toward the establishment of guilt, is sufficient to carry the case to the jury and to sustain a conviction unless it appears to this court that it is so flagrantly against the evidence as to shock the conscience or lead to a belief that the verdict was the result of prejudice on the part of the jury.''

The judgment is affirmed.