# Powell v. Commonwealth.

November 9, 1948.

468

John M. Lyttle, J. R. Llewellyn and E. B. Rose for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Green Bowling, Squire Lovins, Jr., and appellant, John Powell, Jr., were indicted jointly for the murder of, and conspiracy to murder, Matilda Doyle Griffin, whose death occurred on the night of April 17, 1947. The indictment alleged that death was caused by the administration of strychnine. The details of her actions immediately before her death were not related by her husband who was the only person present at the time she died. The husband stated that earlier in the evening Bowling, in the company of two other men, called and remained a few minutes at his house. At that time Mrs. Griffin was preparing the evening meal, and Bowling remained in the kitchen with her while Mr. Griffin and the other visitors hovered around the fire in another room. Mr. Griffin did not see Bowling or either of his companions perform any act to which he could point as indicating that poison was administered to his wife by either of the defendants. He did not identify Bowling's companions because he did not know them. On the following morning Dr. William E. Nichols of Manchester was called to the Griffin home. He had the body taken to an undertaking establishment where he removed the stomach, placed it in a fruit jar, and stored it overnight in a refrigerator. On the following morning he delivered it to the Sheriff and two members of the Highway Patrol with instructions to deliver it to the Kentucky Experimental Station at the University of Kentucky in Lexington for chemical analysis. The analysis showed that the stomach contained nine-tenths of a grain of strychnine, more than enough to produce death. The evidence

showed conclusively that Mrs. Griffin had been in good health until the night she died. At the time of her death she was seventy-three years of age.

To prove motive for the commission of the crime, the Commonwealth established that less than a month before her death Mrs. Griffin had caused a warrant to issue against appellant and his codefendant, Bowling, charging them with having robbed her of $300 in paper certificates, a twelve-gauge shotgun and an uncertain amount of silver coins. Several witnesses testified as to having seen the three defendants together in the general vicinity of the Griffin residence on the late afternoon of April 17th. Some of them testified that they were walking in the direction of the Griffin residence. Squire Reid testified that the deceased lived on his farm, and on the night she died and after he retired, he was aroused by disturbances to his stock. He proceeded toward his barn and secreted himself by lying down by the side of a fence. He stated that three men passed within a few feet of him, coming from the direction of the Griffin home. He recognized the men as Bowling, Lovins, and Powell. He testified that Bowling said "Boys that fixed her" and appellant said "That has beat the case. Now I'll get us some liquor." Powell later was seen in the possession of a jar containing whiskey.

Appellant relies for reversal on the grounds (1) that the Commonwealth failed to establish the corpus delicti, (2) the Court admitted incompetent testimony prejudicial to the substantial rights of the appellant, and (3) the instructions are erroneous.

We cannot agree with the first contention. The corpus delicti may be proved by circumstantial evidence, as it was in this case. The Commonwealth established motive on the part of the conspirators in proving the deceased caused the arrest of Bowling and appellant, and that she was the principal, if not the only witness, against them. It further established the fact that Lovins and Powell are brothers-in-law. The evidence for the Commonwealth placed all three of the conspirators at the home of Mrs. Griffin after night had fallen, thus they had the opportunity to administer poison to her. Of the defendants appellant, alone, testified on

this trial. His defense was an alibi and he denied having made the statement attributed to him by Squire Reid, viz., "That beats the case." Thus, if he made the statement, he made no endeavor to explain it, and the question of whether or not he made the statement was one for a jury's determination. Strychnine was found in the stomach of the deceased in sufficient quantities to cause death. All of the witnesses who had an opportunity to observe the deceased before her death stated that she had been in good health and had done her usual chores up to the time of retiring on the night she died. The Commonwealth did not prove that either of the defendants had purchased strychnine, but there was evidence to the effect that Mrs. Griffin had never used strychnine and none was in the house either before or after she died. It is true that when circumstantial evidence is relied on in support of proof of the corpus delicti it must be more consistent with the guilt than with the innocence of the accused. We think the evidence in this case meets the test of the rule, but we are asked to disregard the evidence of the husband of the deceasd and Squire Reid, because of its lack of probative value. The evidence of Mr. Griffin showed his memory to be faulty in certain respects, but appellant did not object to his being introduced as a witness and on the trial did not question his capability for understanding the facts concerning which his testimony was offered. He therefore was a competent witness, Section 605, Civil Code of Practice; and the probative value of his testimony was one to be determined by the jury. The criticism of the testimony of Squire Reid is that it was not in harmony with other evidence adduced on the trial. Even if we should give full credence to the contention that Reid's testimony conflicted with other witnesses, such fact did not render his testimony incompetent and the jury had the right to believe it to the exclusion of any testimony contradictory of it.

The second ground for reversal, viz., the admission of incompetent testimony, is meritorious. The Court permitted the Commonwealth to prove over the objection of appellant that he was a deserter from the Army. This line of questioning was persistently indulged in by the Commonwealth's Attorney and the only purpose it could have served was to inflame the minds of the jurors. We

have consistently held that the proof of another crime unconnected with that for which the accused is being tried is inadmissible and constitutes reversible error. Grigsby v. Commonwealth, 299 Ky. 721, 187 S. W. 2d 259, 159 A. L. R. 196, and cases therein cited. It is true that at the close of all the evidence and on the day following the introduction of this line of testimony the Court admonished the jury not to consider the evidence objected to; but, by the time this admonition was given the damage had been done, and we doubt if it was possible for any juror under the circumstances, no matter how fair-minded he may be, to disabuse his mind of such inflammatory testimony. For this reason alone we would be required to reverse the judgment, but other errors in the record likewise impel a reversal.

It was competent for the Commonwealth to show that the deceased had accused appellant and one of his codefendants of robbing her, but it was incompetent to go into the details of the robbery which the Commonwealth's Attorney was permitted to do. The mere fact that the deceased had accused two of the conspirators of robbing her was sufficient for the purpose which rendered it competent, and it made no difference, insofar as establishing the motive is concerned, whether the defendants actually committed the robbery or not. Likewise, it was incompetent for the Commonwealth's Attorney to read the evidence of Squire Reid given on the examining trial because it corroborated his testimony and had the effect of exaggerating the facts testified to by the witness. Likewise, it was incompetent to introduce evidence in chief by a witness called in rebuttal.

The complaint in respect to the instructions is that the Court in its instructions permitted the jury to speculate that poison was administered to the deceased by mixing it with other drinks which in themselves were healthy and salutary. This was error because there was no evidence supporting this theory. On the next trial the Court will not make such references. The second objection to the instructions is based on the theory that there was no evidence to support the charge of conspiracy and the Court erred by giving an instruction on conspiracy. This contention is not sound. All of the evidence points to the fact that if appellants committed a murder, they did so in pursuance of a conspiracy.

For the reasons indicated, the judgment is reversed with directions that it be set aside and that appellant be granted a new trial to be conducted in conformity with this opinion.