**COMMONWEALTH of Kentucky, Appellant,**

v.

**James Earl JACKSON, Appellee.**

Court of Appeals of Kentucky.

June 24, 1955.

Rehearing Denied Sept. 30, 1955.

J. D. Buckman, Jr., Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellant.

T. D. Shumate, George T. Ross, Richmond, for appellee.

CLAY, Commissioner.

Appellee, James Earl Jackson, was tried for murder and convicted of voluntary manslaughter, the jury fixing his punishment at 21 years in the penitentiary. On Jackson's motion, an order was entered granting a new trial for the reason that a certain question propounded to Sallie Jackson, a defense witness and the wife of the accused, was so highly inflamable as to be prejudicial to appellee's substantial rights. The Commonwealth on this appeal requests a certification of the law as to the propriety of the ruling.

One evening Jackson had loaned his automobile to Levi Webb and Howard Moores, and in a collision they slightly damaged it. About 5:30 the next morning, Webb and Moores, accompanied by one Pingleton, entered the driveway leading to Jackson's home. The Commonwealth's proof disclosed Jackson came out of the house armed with a pistol and, on seeing the damage that had been done to his car, flew into a fit of rage, cursed the three and told them he was going to kill them. He first slew Webb as he was backing from him with his hands up, begging for his life. He next shot Moores who was running away and he fell in the road wounded. He then turned and fired two or three times at Pingleton; the latter had been fleeing from the melee all this time and was so distant he was missed.

Evidence introduced in behalf of Jackson tended to prove he killed Webb in self-defense.

The sole issue here involved grows out of the cross-examination of the defense witness, Sallie Jackson, the wife of the accused. On direct examination she testified that Webb, Moores and Pingleton came up the driveway while she was preparing breakfast. Her own little boy ran out to meet them and she heard Webb call him a dirty name and remark: "We know he (Jackson) is up there, tell him to come on down here, we are going to kill him." Her boy thereupon came running back to the house crying. At this point, Jackson, getting his pistol, went down and asked them to leave. According to her, they refused and Webb and Moores kept advancing on her husband. She next said: "Well, Levi Webb ran his hand in his right front pocket. I could see the print of a pistol, and Moores ran around by the side of Levi." Her husband began firing his pistol in defense of his life, with the result that Webb was killed and Moores wounded.

On cross-examination she stated she went to Abe Gilbert's filling station, about 200 yards down the road from the house, and requested Jannie Brewster, a daughter of Gilbert's who was at the station, to call the state police. Gilbert was also at the station and Sallie Jackson informed the two "there has been some trouble out there." She was asked what kind of trouble had occurred and replied: "I told her (Jannie Brewster) there had been some shooting out there. Some men were there with a wrecker. That is all I remember saying to her about it." The following question was next propounded to her:

"Q. 16. Didn't she (Jannie Brewster) ask you what the reason was for the shooting and you said there that James Jackson had shot and killed a

man up there, and at the same time you said, *he had a crazy spell on then the same as he did a few days before when he shot you?*" (Our emphasis.)

Counsel for Jackson immediately objected to the question and moved the court to set aside the swearing of the jury and continue the case. Before the question could be passed upon, the witness answered "No". The jury was sent from the courtroom and the trial judge, after hearing arguments on the objection to the question and on the motion to discharge the jury, sustained the objection, giving the usual admonition, but overruled the motion. The avowals of Gilbert and his daughter, Jannie Brewster, made a part of the record by the Commonwealth after the court refused to allow them to testify in rebuttal, disclose that Sallie Jackson said to them "* * * he (Jackson) was having a spell like he had when he shot her (Sallie Jackson)."

The trial judge stated his reason for setting aside the verdict and granting a new trial was that the question introduced another offense into the case and, regardless of whether an answer was given or not, the question, standing alone, had such a damaging effect on the minds of the jury that it deprived Jackson of a fair trial. He also believed the admonition did not cure the error.

The Commonwealth contends the witness was properly interrogated for impeachment purposes concerning a statement she allegedly made to Gilbert and his daughter, and further, upon receiving a negative response, it had a right to offer the two witnesses in rebuttal to contradict her.

It would serve no good purpose to resolve, as the Commonwealth argues we should, whether, assuming the question was erroneous, the prompt ruling of the court in sustaining an objection and in giving an admonition protected the rights of Jackson. As there must be a retrial of this case, the inquiry now is: Should the Commonwealth be permitted to ask the witness, Sallie Jackson, the same question and require her to answer it, with the further right to the

Commonwealth, should she reply in the negative, to call Abe Gilbert and Jannie Brewster in rebuttal, for the purpose of impeaching her, the trial judge admonishing the jury for what purpose such testimony shall be considered?

The principal objection raised by the defendant (and apparently accepted by the trial court) is that the question propounded and the rebuttal testimony were highly prejudicial because they would inject into this case another crime of which the defendant might be guilty, and it is elementary that defendant should not be put on trial for two crimes at the same time. See Martin v. Commonwealth, 93 Ky. 189, 19 S.W. 580; and Riggs v. Commonwealth, 103 Ky. 610, 45 S.W. 866. However, the fact that impeaching testimony tends to show the commission of another crime does not render such testimony inadmissible if it is an essential part of the contradictory evidence. Dively v. People, 74 Colo. 268, 220 P. 991; Commonwealth v. West, 312 Mass. 438, 45 N.E.2d 260; Skinner v. State, 36 Ala.App. 434, 60 So.2d 363. In a related situation, a witness may be interrogated concerning matters tending to show him guilty of a like crime for which the defendant is being prosecuted. Sparks v. Commonwealth, 193 Ky. 180, 235 S.W. 767.

The statement attributed to the witness must be accepted or rejected as a whole because the reference to another shooting descriptively clarifies the kind of "crazy spell" that allegedly motivated the defendant's actions. In addition, in laying a foundation to contradict, a witness could truthfully deny making a partial statement taken out of context, and there would be no basis for contradiction. The fact that this testimony may be damaging does not render it inadmissible if otherwise competent, and particularly is this true since the court should admonish the jury as to the only purpose for which such evidence may be introduced.

The only issue is whether or not the question is a proper one to impeach the credibility of the witness, as authorized by

CR 43.07 and 43.08 (formerly Civil Code Sections 596, 597, and 598). It is generally recognized that a witness may not be impeached with respect to a matter which is irrelevant and collateral to the issues in the action. 58 Am.Jur., Witnesses, Section 767; Nolan v. Commonwealth, 261 Ky. 384, 87 S.W.2d 946; Keene v. Commonwealth, 307 Ky. 308, 210 S.W.2d 926. Our principal difficulty in a case of this sort is the determination of just what the vague expression "collateral" means. Wigmore states the classical test of collateralness as follows:

> "Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose *independently* of the self-contradiction?" (Our emphasis.)

Wigmore on Evidence, (3rd Ed.) Vol. 3, Section 1020, page 692.

According to Professor Morgan:

> "A matter affecting credibility is not collateral if it may be proved by evidence *extrinsic* of cross-examination." (Our emphasis.)

Morgan, Basic Problems of Evidence, Vol. 1, page 70.

In Marcum v. Commonwealth, 282 Ky. 799, 140 S.W.2d 387, 390, a similar though broader concept is thus stated:

> "The general rule also is that the inquiry should relate to a fact that is *otherwise* relevant and competent, and not collateral." (Our emphasis.)

■ There appear to be two classes of matter that fall within the scope of independent admissibility. Putting aside for the moment the question of self-contradiction, they are: (1) facts relative to the substantive issues in the case; (2) facts showing bias or interest (and certain other matters not here pertinent). Wigmore on Evidence, (3rd Ed.) Vol. 3, Section 1021.

Considering the first classification, it is clear that Mrs. Jackson's statement could not have been introduced *independently as* substantive evidence. In this respect it has two objectional features. In the first place, it introduces another crime unrelated to the one with which defendant is charged. See Keene v. Commonwealth, 307 Ky. 308, 210 S.W.2d 926. In the second place, the reference to "a crazy spell" is not a statement of fact but constitutes an opinion of the witness.

■ With respect to the second classification, it is well settled that the bias or interest of the witness is not a collateral matter and may be shown independently of self-contradiction. See Wigmore on Evidence, (3rd Ed.) Vol. 3, Sections 1021, 1022; 58 Am.Jur., Witnesses, Section 827; Leach v. Commonwealth, 129 Ky. 497, 112 S.W. 595; Johnson v. Commonwealth, 259 Ky. 397, 82 S.W.2d 454.

Again considering Mrs. Johnson's statement to the effect that her husband had a crazy spell like he had when he shot her, such statement, *standing alone,* would not be independently admissible to show bias or interest. As a matter of fact, there could be no inference of bias or interest one way or the other from that simple statement. We, therefore, find that the statement is not independently admissible on either of the two grounds under the classical test of collateralness.

However, while the test laid down by Wigmore is a practical one as far as it goes, being one of admission rather than exclusion, there is an additional category of evidence which, though not independently admissible, is competent to discredit the testimony of the witness and is therefore not collateral. In this category are prior statements of the witness that contradict him concerning his version of the material circumstances relevant to the issue being tried.

■ Obviously the credibility of a witness with respect to a material issue in a case is not a collateral, immaterial or irrelevant matter. Therefore, if a prior statement bears upon the story of a witness with such force and directness as to give

it appreciable value in determining whether or not that story is true, such statement may be introduced against him. Gulf C. & S. F. Ry. Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068. If the effect of the prior contradictory statement "is to pull out the linchpin of the story" told on the stand by the witness, it is competent evidence. McCormick on Evidence, Section 47, page 102.

Of course a proper foundation must be laid, and such contradictory evidence must relate to a material matter. See Barnes v. Commonwealth, 179 Ky. 725, 201 S.W. 318; Miller v. Commonwealth, 241 Ky. 818, 45 S.W.2d 461; Nolan v. Commonwealth, 261 Ky. 384, 87 S.W.2d 946; Keene v. Commonwealth, 307 Ky. 308, 210 S.W.2d 926. For a well considered case on the immateriality of contradictory evidence, see Noble v. State, 253 Ala. 519, 45 So.2d 857. Clearly the circumstances of the killing involved in this case were material matters.

We find an excellant example of the admissibility of contradictory evidence in the case of Nolan v. Commonwealth, 261 Ky. 384, 87 S.W.2d 946. There the defendant was charged with murder. One of defendant's witnesses was his father who testified that his son shot in self-defense. Shortly after the killing the father had denied his presence at the scene. The court held it proper to contradict the witness on this matter, saying 87 S.W.2d at page 949:

"For the purpose of affecting the credibility of this material evidence of an adverse witness, directly bearing upon the one issue to be tried by the jury as to appellant's justification for his admitted killing of Hensley, his testimony was properly subject to impeachment, as here permitted, for discrediting it."

In Crawford v. Commonwealth, 235 Ky. 368, 31 S.W.2d 618, the defendant was convicted of voluntary manslaughter as in this case. A witness for the Commonwealth had testified to facts that tended to make out a case of murder against the defendant. The lower court refused to permit the defendant to prove that the witness immediately after the killing had made statements indicating he was of the opinion that the defendant had killed in self-defense. The judgment was reversed on the sole ground that such evidence was competent and material.

In the case of Franklin v. Commonwealth, 105 Ky. 237, 48 S.W. 986, 989, it was held proper to contradict a witness by showing a prior statement which was "so different from his testimony given on the trial". Similarly in Rockport Coal Co. v. Barnard, 210 Ky. 5, 273 S.W. 533, 536, it was held that an expression of opinion inconsistent with the witness' testimony on the stand "was competent to destroy or weaken the latter".

It will be noted that in the last three cited cases it was held proper for the purpose of impeachment to introduce as prior contradictory statements the *opinions* of the witnesses. See also Wigmore on Evidence, (3rd Ed.) Vol. 3, Section 1041; McCormick on Evidence, Section 35; and Bright v. Wheelock, 323 Mo. 840, 20 S.W.2d 684, 66 A.L.R. 289.

From our foregoing discussion it is apparent that a witness may be interrogated about, and contradictory evidence may be introduced concerning, a material matter even though: (1) it refers to another possible crime, (2) it is not admissible as substantive evidence, (3) it does not show bias or interest, and (4) it involves an opinion of the witness. Our final concern is whether or not the statement attributed to Mrs. Jackson was of such a contradictory character that the jury should be permitted to consider this evidence as affecting the credibility of the witness.

With respect to contradiction, as stated in Wigmore on Evidence, (3rd Ed.) Vol. 3, Section 1040, page 725:

"* * * there must of course be a real *inconsistency* between the two assertions of the witness. The purpose is to induce the tribunal to discard the one statement because the witness has also made another statement which

cannot at the same time be true. Thus, it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an inconsistency that is required.

"Such is the possible variety of statement that it is often difficult to determine whether this inconsistency exists. But it must appear 'prima facie' before the impeaching declaration can be introduced. As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the *whole impression or effect* of what has been said or done. On a comparison of the two utterances, are they in effect inconsistent? Do the two expressions appear to have been produced by inconsistent beliefs?" (Emphasis the author's.)

McCormick on Evidence, Section 34, page 63, states:

"The theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the truthfulness of both statements. To create this doubt, what is the degree of inconsistency required? The language of some of the cases seems over-strict in suggesting that a contradiction must be found, and under the more widely accepted view any material variance between the testimony and the previous statement would suffice. * * Seemingly the test should be, could the jury reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a prior statement of this tenor? Accordingly if the previous statement is ambiguous and according to one meaning would be inconsistent with the testimony, it should be admitted for the jury's consideration. In applying the

criterion of material inconsistency reasonable judges will be likely to differ, and a fair range of discretion should be accorded to the trial judge. Moreover, it is to be hoped that instead of restricting the use of prior statements by a mechanical use of the test of inconsistency, the courts may lean toward receiving such statements in case of doubt, to aid in evaluating the testimony. The statements, indeed, having been made when memory was more recent and when less time for the play of influence has elapsed, are often inherently more trustworthy than the testimony itself."

In Commonwealth v. West, 312 Mass. 438, 45 N.E.2d 260, it was held not necessary that the contradiction be in plain terms but it was enough if the proffered testimony taken as a whole afforded some indication the fact was different from the one the witness sought to prove. In O'Neill v. Minneapolis St. Ry. Co., 213 Minn. 514, 7 N.W.2d 665, it was held that the degree of inconsistency was not controlling but if there is any variance between the witness' testimony and a prior statement, the statement should be received and its effect upon the credibility of the witness left to the jury.

In Kentucky, in the case of Calmes v. Commonwealth, 304 Ky. 71, 199 S.W.2d 993, it was held that the reference to "statements" in Section 597 of the Civil Code (now CR 43.07) did not require direct contradictory statements but that the language embraced any indirect contradictory statement.

█ It therefore seems the question of contradiction is whether or not the proffered statement and the witness' testimony lead to inconsistent conclusions, indicating the witness' differing expressions appear to have been based on incompatible beliefs. See Rockport Coal Co. v. Barnard, 210 Ky. 5, 273 S.W. 533.

In the present case Mrs. Jackson testified to facts concerning the manner of the

killing which tended to prove the defendant shot in his own self-defense. Is the witness' conclusion that defendant fired during a "crazy spell", such as caused him to shoot once before, so inconsistent with self-defense that the jury should be permitted to consider the evidence as affecting the witness' credibility?

 We think it reasonably inferable from Mrs. Jackson's statement that she was, at the time the matter was fresh in her memory, under the distinct impression that her husband killed Webb in an unreasonable fit of anger. If she had believed at that time her husband shot to defend himself, it is probable she would have told her neighbors something to indicate such circumstance. Whether or not her testimony and her prior statement are truly contradictory, at least the question is doubtful, and under the modern trend of authorities it should be left to the jury to determine whether or not they were inconsistent and affected her credibility. See Carr v. Commonwealth, 307 Ky. 207, 210 S.W.2d 778.

The court should of course give a proper admonition as the purpose and effect of the question propounded to the witness and the rebutting testimony.

The law is so certified.

STEWART, C. J., and SIMS and MOREMEN, JJ., dissent.

STEWART, Chief Justice (dissenting).

I find myself unable to go along with the majority opinion. The question under consideration, as I see it, sought to establish in the minds of the jury a separate and disconnected offense against the accused under the guise of attempting to impeach Sallie Jackson on a collateral matter. It is an elementary doctrine of the criminal jurisprudence of this state that one should not be put on trial for two crimes at the same time. Powell v. Commonwealth, 308 Ky. 467, 214 S.W.2d 1002. None of the well-recognized exceptions to this rule apply in this case.

The reason why one on trial in a criminal proceeding should be given the protection of this doctrine is clearly set forth in 20 Am.Jur., Evidence, Sec. 309, p. 288, in this language: "To admit proof of crimes other than the particular one with which the accused is charged would inevitably lead to the inference that the depravity which motivated the previous crimes continued and was the basis for the commission of the particular crime for which the accused must stand trial, and the courts have repeatedly affirmed the impropriety of raising such a presumption of guilt by proof of other crimes. Furthermore, it is clear that evidence of other crimes compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the charge immediately before it."

The true test of collateralness as regards contradiction by extrinsic testimony is laid down in the old English case of Attorney-General v. Hitchcock, 1 Exch. 99. Such evidence, this case held, should conform to the qualities imposed by this standard, namely: The matter is admissible if the fact, upon which the prior self-contradiction is predicated, can be shown in evidence for any purpose independently of the self-contradiction. See also Wigmore on Evidence (3d ed.), Sec. 1020, p. 692. Since the evidence in dispute would clearly be incompetent independently of its use for the purpose of self-contradiction because of the reasons indicated, it may not be a subject of inquiry to lay a foundation to impeach Sallie Jackson.

Another, and highly practicable, reason why this evidence is not admissible is because it is so inflammatory and highly prejudicial that it is doubtful any admonition by the court could remove its poisonous effects from the minds of the jury. McCormick on Evidence at page 136 points out that in extreme situations, such as we have here, where the danger of the jury's misuse of the evidence is great, and its

898

value for legitimate purposes is slight, it should be excluded.

I therefore dissent from the majority opinion and I am authorized to state that Judges MOREMEN and SIMS join in this dissent.