**William Charles JOHNSON, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 20, 1966.

William E. Scent, Reed and Scent, Paducah, for appellant.

Robert Matthews, Atty. Gen., Robert D. Preston, Asst. Atty. Gen., Frankfort, for appellee.

HILL, Judge.

Appellant was tried jointly with his codefendants, Hamilton and Shelby, for storehouse breaking of which they were all convicted and given four-year sentences. No motion was made for a separate trial under RCr 9.16. Appellant did not testify.

A number of "points" are argued by appellant. The first is that the trial court erred in overruling his motion for acquittal at the conclusion of the evidence for the Commonwealth.

We begin with the evidence for the Commonwealth in chief. There was evidence damaging to appellant by Hamilton (a codefendant) given after the Commonwealth closed its case, but we shall not consider this evidence in resolving the first question but discuss it later under another point.

On the night of August 25, 1965, a place known as the Young Men's Sportsman's Club at 400 South 7th Street in Paducah, Kentucky, was broken into, and a black and white portable television set and thirteen full quarts and seven partial quarts of whiskey were taken therefrom. Appellant resided in a rooming house across the street from the Club. At about 12:30 a. m., the night of the break-in, he was standing on the street near the Club when the man in charge locked it for the night. Appellant advised the man to "lock it up tight," but we attach little significance to this remark.

Floyd Robinson, another tenant of the rooming house in which appellant resided, was introduced by the Commonwealth. He testified he was with appellant from 11:00 p. m. to 5:00 a. m. the night of the break-in. However, he practically admitted on cross-examination there may have been a period during that time when "they were

sitting drinking at a girl's house" that he was not with appellant. He also testified that about 2:00 p. m. the day after the break-in, Hamilton came to his room inquiring of the location of appellant's room, that he advised him of its location. Hamilton left for about two minutes and on his return offered Robinson some whiskey. They sat "around drinking" for about twenty minutes. Hamilton asked Robinson if he would "help him some," and he answered "yes." He later testified Hamilton asked his help with "the bag and TV." Hamilton left with the remark: "Just a minute and I will be right back." He did not return, but shortly Shelby came into Robinson's room and asked the latter to help him carry the television and bag downstairs to an automobile, which he did. Robinson said the television set was black and white like the one missing from the Club, but he did not know what was in the bag.

■ John Smith, another Commonwealth witness, testified that in the afternoon following the break-in, he heard appellant and Hamilton in an argument. He stated appellant told him "somebody broke into his (appellant's) room," and wanted to know whether Smith had seen Hamilton. Smith was asked this question and made the following answer:

"Q. What did you say about the Young Men's Sportsman's Club?

"A. He said that they had pulled a job."

And then he elaborated his answer in the following words:

"A. All right. I said I was standing outside of the poolroom and Johnson came up, and he was looking for a certain fellow and said somebody had broke into his room while he went to school out to West Kentucky, and wanted to know had I seen him, and at the same time this certain person was sitting in a car asleep, which I had been trying to wake him up, and I told him where

he was at and they had a few words. And Johnson made the statement that he ought to bust him up the side of his head. And they got out and they had a few words about some stuff, said they had pulled a job and while he was gone they busted in his room and got the stuff and got rid of it. Then there was another fellow and they had a few words and then they walked on away."

Further on he said:

"He (meaning appellant) woke him up, I don't know how he woke him up so quick. Anyhow, he punched him and the fellow woke up, and I had been out there shaking on him and couldn't wake him up, but the minute he touched him— he said 'look here,' and the guy turned over and he asked where was the stuff and the guy said he didn't know, and they had a few words there."

The trial court would not permit Smith to give the names of the two persons referred to in his testimony, and we think this was error. Any objectionable phase of his testimony could have been cured by a proper admonition.

We think the testimonies of Robinson and Smith dovetail to give a logical and reasonable picture of the stolen property being taken from the room of appellant and disposed of without cutting in the appellant. This conclusion may be drawn alone from the statements and admissions of appellant contained in the testimony of Smith.

■ It is concluded the evidence was amply sufficient to convict appellant and that the trial court properly overruled his motion for acquittal at the close of the case for the Commonwealth. Cf. Baker v. Commonwealth, Ky., 307 S.W.2d 773 (1957); Mason v. Commonwealth, Ky., 357 S.W.2d 667 (1962); Harlan v. Commonwealth, 253 Ky. 1, 68 S.W.2d 443 (1934); Byrd v. Commonwealth, Ky., 283 S.W.2d

191 (1955); Carr v. Commonwealth, 307 Ky. 207, 210 S.W.2d 778 (1948); Parsley v. Commonwealth, Ky., 273 S.W.2d 372 (1954); and Hampton v. Commonwealth, 308 Ky. 270, 214 S.W.2d 272 (1948).

Appellant's second "point" is thus stated: "Johnson did no act after the close of the Commonwealth's case in chief that constituted a waiver of his acquittal motion."

The conclusions reached under "point" one render the question of waiver a moot one. The third "point" discussed by appellant is a continuation of the first two in that he contends this court should direct a judgment n. o. v. as in civil cases. The answer being, of course, if he was not entitled to prevail on his motion for acquittal at the close of the Commonwealth's evidence, his position has certainly not improved. Indeed, it has deteriorated as we shall see later.

The interesting question is presented in appellant's fourth "point" that "the evidence introduced by Johnson's codefendant cannot be used to complete the Commonwealth's case against Johnson." The fourth "point" is a two-prong thrust: First, that the evidence given by the codefendant Hamilton could not operate to waive Johnson's motion for acquittal; and secondly, the trial court should have given Johnson's requested instruction to disregard Hamilton's evidence in determining the guilt or innocence of Johnson. As for the first "prong," it is sufficient to say the case against Johnson was sufficiently "complete" without Hamilton's evidence as heretofore observed, and it is not imperative that we say whether or not the testimony of Hamilton operated to waive appellant's motion for acquittal, although for all practical purposes we answer the question in the negative in discussing the competency of the testimony of Hamilton later on.

█ The second "prong" of appellant's fourth "point" assails the failure of the trial court to give appellant's offered instruction to disregard Hamilton's evidence

as it pertained to Johnson. There was no objection or motion for admonition to the jury by appellant to any of Hamilton's evidence. His motion for an instruction to the jury relative to Hamilton's evidence came too late. Cf. Clements v. Commonwealth, Ky., 384 S.W.2d 299 (1964), wherein it is said: "The law is well settled that a defendant waives his right to an admonition or discharge of the jury by not promptly asking for it." Also see Adams v. Commonwealth, Ky., 261 S.W.2d 811 (1953), and Neely v. Commonwealth, Ky., 325 S.W.2d 79 (1959).

Another contention relied on by appellant but not specifically listed in the "points" and discussed at some length by both appellant and appellee merits our comment as it pertains to the consequence of the evidence of codefendant Hamilton on appellant's case.

Appellant contends the evidence of Hamilton, his codefendant, cannot be used against him to bolster the Commonwealth's case after he (appellant) stood on his motion for acquittal and declined to testify, and that to permit evidence of a codefendant would result in his having to take the witness stand in violation of the fifth amendment to the Constitution of the United States.

For appellee it is argued that the fifth amendment is personal to the defendant desiring to testify; that is, he cannot be compelled to give evidence against himself but may waive the right.

In discussing the fifth amendment, supra, it was said in Gordon v. Tracy, 194 Ky. 166, 238 S.W. 395 (1922):

"* * * a constitutional provision that 'no person be compelled to furnish evidence against himself,' does not relate to questions of property, or business, or to the protection of other persons by the witness."

It is well to keep in mind that appellant did not ask for a separate trial under RCr 9.16.

**40**

It must be assumed also that appellant was familiar with the provisions of KRS 421.225 which state: "In any criminal or penal prosecution the defendant, on his own request, shall be allowed to testify in his own behalf * * *."

■ Having entered his trial and declining to ask for a separate one, appellant should have anticipated his co-defendants would want to testify in their own behalf and, perchance, their evidence might incriminate him. He assumed the hazards of a joint trial.

This subject is discussed in 23 C.J.S. Criminal Law § 804(2) in this language:

"Statutes making an accused person in a criminal trial a competent witness at his own request, but not otherwise, have been construed to permit him to testify voluntarily against a codefendant with whom he is jointly tried, or against himself; and to render any of a plurality of defendants on trial competent to testify on behalf of the government, provided only that he testifies at his own request. Under such a statute, testimony voluntarily given by an accused on his own behalf or on behalf of the prosecution is admissible against his codefendant.

\* \* \* \* \* \*

"The propriety of admitting the testimony of an accused, in his own behalf, has been recognized, even though such testimony may be injurious to his codefendant."

Some support of the rule outlined in Corpus Juris may be found in Owen v. Commonwealth, 181 Ky. 257, 204 S.W. 162. See also Degnan v. United States, 2 Cir., 271 F. 291.

We are persuaded that under the circumstances of the present case the evidence of appellant's codefendant was competent notwithstanding its injurious consequence on the appellant.

The judgment is affirmed.