Clayton WARNER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Sept. 22, 1981.

Kevin G. Henry, Lexington, for appellant.

Steven L. Beshear, Atty. Gen., R. Thomas Carter, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

Appellant Clayton Warner was indicted by the Fayette County Grand Jury on February 18, 1980, for three counts of first-degree rape (KRS 510.040) and one count of first-degree sodomy (KRS 510.070). A three-day trial resulted in the jury finding the appellant guilty on all counts and recommending ten years' imprisonment on each of the four counts. The trial judge entered final judgment in which he ran the sentences on counts 1 and 2 consecutively and the sentences on counts 3 and 4 concurrently with the sentences for counts 1 and 2, for a total maximum sentence of 20 years. Appellant's motion for a new trial was denied. He appeals as a matter of right.

The appellant was a Fayette County deputy jailer, a captain and a shift commander of the Fayette County Detention Center (hereafter referred to as the Center.) Three women charged that he raped them while they were incarcerated in the Center. A fourth woman charged that he forced her to perform fellatio on him while she was incarcerated at the Center. The trial produced no physical evidence and no corroboration of the witnesses' testimony. It turned out to be a swearing contest, with appellant the unhappy victim.

The only issue raised on this appeal is whether "The trial court erred in admitting evidence of prior immoral acts to impeach appellant's character and credibility as a witness."

The three alleged rapes were said to have occurred during the last quarter of 1979. The fellatio offense is charged to have occurred in August or September, 1977.

At the conclusion of the Commonwealth's case, appellant testified in his own behalf. He denied the charges made against him and testified to impeccable conduct over the past years. On cross-examination the Commonwealth's Attorney proposed questions to appellant in an unsuccessful attempt to associate him with the commission of prior sex-related offenses. Objections to such questions were overruled by the court, and the appellant was required to answer the questions. This interrogation can best be demonstrated by quoting it:

"Q. Are you denying that you were fired because—

(Objection, overruled)

Q. Are you denying that you were fired because you couldn't keep your hands off female patrons? (At Marty's nightclub).

A. I certainly am.

(Objection, overruled)

. . . .

Q. Have you had any conversations with her (Helen Blankenship) about trying to get her into your way of thinking about sex and going to bed?

A. No, sir.

(Objection, overruled)

. . . .

Q. Isn't it true, Mr. Warner, that on many, many occasions you have tried to get Helen Blankenship to go to bed with you?

A. No, sir, that is not true.

Q. Isn't it true that you've fondled her, touched her breasts?

A. No, sir, that's not true.

. . . .

Q. You have also fondled female inmates a lot too, haven't you?

A. No, sir, I have not.

. . . .

Q. Do you have any idea why she (Libby Sharp) would be willing to come in and testify that she quit her job at the jail because of sexual advances made by you?

(Objection, overruled)

Q. Do you have any idea why Libby Sharp, Mike's Sharp's wife, is willing to come here and testify that she quit her job at the jail because of sexual advances made by you?

A. No, sir, because I never made sexual advances toward her.

. . . .

Q. And if Helen Blankenship has given a written statement to the police indicating the times that you have made sexual advances toward her, she's lying too?

A. I did not make any sexual advances toward her.

Q. Well, that's what I'm saying. She's going to be lying too.

A. If she said that, she'd have to be lying.

Q. Just like Tina Hickey and Vicky Holliday and Denise Simpson?

A. I think you know that they're lying.

Q. No sir. I know they're telling the truth.

THE COURT: Now, wait a minute. Be careful.

Q. But Libby Sharp and Helen Blankenship will join this cast of liars?

A. I know nothing about any testimony or anything about—I can't say they're liars. I'd have to hear what they have to say.

Q. Well, I told you what they're going to say. If they say that, they're lying?

A. If they say I made sexual advances to 'em, yes. I'd have to clarify what you call sexual advances.

Q. Well, you define it to me.

(Objection)

Q. Would putting your hand on a woman's breast without her invitation be a sexual advance.

A. Certainly.

Q. Would putting your hand on a woman's behind without her invitation be a sexual advance?

A. That would, yes.

Q. Would unbuttoning a woman's blouse in an elevator when no one else is around and trying to kiss her chest be a sexual advance?

(Objection, overruled. Continuing objection)

Q. My last question was what about when you open a woman's blouse and kiss her chest and try to get her to go to bed with you for weeks at a time?

(Objection)

Q. Is that a sexual advance, the situation I just described.

A. That would be a sexual advance, yes, sir.

Q. When you ask a woman to go to bed with you constantly over several months, is that a sexual advance.

MR. SLONE: Judge, again, I'd like to know who he's talking about.

MR. SMITH: Helen Blankenship.

A. Let me clarify, I have had no desire to go to Helen Blankenship since I've known her or do I now have any desire to go to bed with Helen Blankenship."

After concluding the evidence for the appellant, the Commonwealth's Attorney called two rebuttal witnesses in an attempt to overcome appellant's denial of prior sex offenses. Conveniently available were Marion Corns and Libby Sharp.

The evidence produced by the Commonwealth of which appellant justifiably complains consists of three separate, unrelated incidents in which the apellant allegedly expressed sex-related objectives. First, Janis Thornton, over timely objection, was permitted to testify in chief that while she was incarcerated in the Center in June, 1977, the appellant exposed himself to her and unsuccessfully sought her to have oral sex. Secondly, Marion Corns, the owner of Marty's nightclub, on rebuttal and over timely objection, was permitted to testify that he fired appellant as a bouncer because "I had female customers come over a period of two or three months that complained that he was trying to pat 'em on the back and on their butt and play with their breasts." The third incident allegedly occurred with Libby Sharp, a booking officer at the Center in 1979. On rebuttal and over timely objection, she was permitted to testify that she was on an elevator with appellant and "just all of the sudden he leans over and starts kissing me on the chest and that's the extent of it really."

Impeaching testimony has been the subject of misunderstanding and improper evaluation. Appellant argues that testimony of particular wrongful acts is not proper for impeachment in sex-related charges. On the other hand, the Commonwealth contends that evidence of other crimes or occurrences is admissible if it tends to show intent or a common plan, scheme, or system involving the crime charged. Further, the Commonwealth contends that appellant placed his character in issue; consequently, the Commonwealth had every right to question his good character on cross-examination and rebuttal testimony.

Both the appellant and the Commonwealth refer to Kentucky Evidence Law Handbook by Professor Robert G. Lawson in support of their respective contentions. Appellant refers to Section 4.15 thereof and to CR 43.07. The pertinent part of CR 43.07 provides, "A witness may be impeached by any party, without regard to which party produced him, by contradictory evidence . . . but not by evidence of particular wrongful acts . . . ." In commenting on CR 43.07, Lawson says, in Section 4.15:

". . . Before the adoption of this rule, Civil Code Rule 597 allowed for the impeachment of witnesses by use of two kinds of character—general immorality and untruthfulness. CR 43.07 has eliminated general moral character as a way of reflecting on credibility and requires that a witness's character for truth and veracity be used. . . .

. . . .

Principles applicable to the use of character evidence for substantive purposes (see Section 2.15) are generally applicable when such evidence is offered for credibility purposes. It is well-known, of course, that community reputation is the proper way in which to establish character and that opinion evidence is inadmissible. . . ."

The reference made by the Commonwealth to Section 2.20(d)(2) of Lawson does not deal with impeachment but deals with relevancy and related problems. The reference deals with the use of character evidence for substantive and not impeachment purposes.

■ Thus, it must be determined whether the disputed evidence in this case was admissible, as the Commonwealth claims it was, to show intent or a common plan, scheme or system involving the crime charged. The Commonwealth, in particular, pointed to Lawson's discussion of prior sexual acts as an exception to the general rule holding inadmissible evidence of prior criminal acts of the accused. An analysis of Lawson's commentary, the cases cited therein, and the additional cases cited in appellee's brief reveals an erroneous application by the Commonwealth to the facts of the case at bar. While the Commonwealth's brief claimed that "Professor Lawson has asserted that the prosecution can introduce evidence of prior sexual misconduct with persons other than the prosecuting witnesses in any sex crime trial even for the purpose of showing disposition, as well as a common pattern, scheme, or plan," a closer reading of Lawson's text indicates that such evidence has been held admissible in only *some* special cases.

In *Russell v. Commonwealth*, Ky., 482 S.W.2d 584 (1972), relied upon by the Commonwealth to support the above-quoted proposition, the court, in the only language relevant to the issues involved here, held:

"In those cases where a defendant is charged with indecent or immoral practices with a child under the age of fifteen years, evidence of separate and distinct prior acts of a *similar* or *identical* nature, not too remote in time, committed upon children other than those charged in the indictment is admissible for the purposes of showing disposition and intent as to the act charged, lustful inclination, motive, a common pattern, scheme, or plan. The separate and distinct acts with other children to be admissible must have a reasonably close relation in scheme and pattern and in time to the act charged." *Id.* at 588. (Emphasis added)

Without even deciding whether the holding of the *Russell* case should be limited to fact situations dealing with sexual miscon-

duct with children, the activities alleged by the three crucial witnesses in this case, Marion Corns, Libby Sharp and Janis Thornton, clearly fail to have a reasonably close relation in scheme and pattern and in time to the acts alleged in appellant's indictment. By no stretch of the imagination can the appellant's alleged activities in Marty's nightclub and in the elevator with Libby Sharp be considered sufficiently similar to show a common scheme or pattern or disposition to commit the crimes charged. The allegations by the witnesses would amount at most, if at all, to the crime of sexual abuse in the third degree, a Class B misdemeanor, quite dissimilar from the Class B felonies for which appellant was convicted. Only the incident alleged by Janis Thornton to have occurred in June, 1977, presents circumstances at all similar to those in issue at trial (i. e., sexual advances upon an inmate at the detention center). However, the above reasoning applies here as well. Thornton's allegation would amount at most to indecent exposure, another Class B misdemeanor, which falls short of the similarity to the offenses present in the *Russell* case.

The separate and distinct acts in the *Russell* case, on the other hand, were separate counts of indecent and immoral practices with infants charged in the *same* indictment. *Id.* at 586. Furthermore, the acts occurred within a short time of each other under very similar circumstances in the same house.

Another case relied upon by the Commonwealth, *Spencer v. Commonwealth*, Ky., 554 S.W.2d 355 (1977), again involved separate criminal acts which were merely different counts in the same indictment. The language used by the court in that case clearly indicated the close similarity required for evidence of such separate acts to be admissible. We quote:

"... In the present case, the evidence relative to the two separate criminal occurrences showed each to have involved the same unique circumstances and modus operandi. Each victim was stopped by a man wearing a police uniform driving a police type of vehicle equipped with flashing blue lights, and was asked to produce her driver's license, giving the appearance that she was about to receive a citation for speeding. A pistol was used to force the victim in each instance to submit to sexual intercourse. Each was ordered to move to the passenger seat of her vehicle to permit the officer to drive the car to a less conspicuous location, where the sexual attack ensued. ..." *Id.* at 358.

Obviously the separate acts admitted into evidence over appellant's objections in the case at bar do not give rise to such close similarity.

The procedural aspects of the *Spencer* and *Russell* cases demonstrate the problem with the Commonwealth's assertions of admissibility in this case. As noted, the separate acts in those cases constituted different counts of the same indictment, and the precise issue on appeal dealt with the refusal to grant severance and separate trials for each count of the indictment. Had the issue in this case been the propriety of trying the sodomy and three rape counts together, the Commonwealth's argument may have been more persuasive. The issue, however, is not the propriety of trying the rape and sodomy counts together, and the Commonwealth's argument is not persuasive.

Another case cited by the Commonwealth to support its argument, *Arnett v. Commonwealth*, Ky., 470 S.W.2d 834 (1971), illustrates still another proper purpose for the introduction of evidence of a separate criminal act. In that case, a murder case, the trial court allowed the introduction of testimony that defendant had earlier drawn a pistol on a person other than the deceased; proper admonitions were given by the trial court. The testimony was held proper by this court to show that the defendant was in possession of a pistol at the time of the murder. Clearly, this holding has no application to the case at bar beyond the restatement of the exception to the general rule that evidence of separate criminal acts may not be introduced. Other

cases cited by the Commonwealth also do no more than reiterate this exception to the general rule.

Introduction of the testimony in question, over the appellant's objections, cannot be upheld then on the basis of showing a common scheme, plan or system.

The argument of the Commonwealth that the appellant opened up the door to character impeachment when on direct examination he sought to show acts and conduct relating to good character· is without foundation. It is permissible for appellant's counsel to inquire of him while testifying in chief whether he committed the acts for which he was indicted without opening the door for character impeachment. Likewise, testimony that is irrelevant or collateral to the issues being tried does not open the door to character impeachment. *Keene v. Commonwealth,* 307 Ky. 308, 210 S.W.2d 926 (1948); *Commonwealth v. Jackson,* Ky., 281 S.W.2d 891 (1955).

The Commonwealth interjects the thought that the error, if any, in permitting the testimony of prior specific unrelated sex offenses to go to the jury was not prejudicial. It is the duty of the Commonwealth's Attorney to be fair with the defendant on cross-examination and throughout the trial. The record reflects that this was not the case in the instant action. A mere cursory reading of the record is sufficient to manifest the extreme prejudicial effect of the challenged testimony to such an extent so as to deny appellant a fair trial.

The judgment of the Fayette Circuit Court is reversed and the case remanded for a new trial consistent with this opinion.

All concur.