Richard N. SIMMONS, Appellant,

v.

Kimberly SMALL, Appellee.

No. 96–CA–1624–MR.

Court of Appeals of Kentucky.

June 5, 1998.

Discretionary Review
Denied by Supreme Court March 17, 1999.

John E. Donnelly, Jr., Bowling Green, for Appellant.

Marc L. Breit, Henry V. Sanders, Louisville, for Appellee.

Before GUIDUGLI, JOHNSON and SCHRODER, JJ.

JOHNSON, Judge.

Richard Simmons (Simmons) has appealed from the judgment of the Jefferson Circuit Court entered on April 30, 1996, which awarded him nothing on his complaint against Kimberly Small (Small) for injuries he allegedly sustained in an automobile accident caused by Small. He also appeals from the trial court's denial of his post-judgment motion for a new trial pursuant to Kentucky Rules of Civil Procedure (CR) 59.01(d) and (h). We reverse and remand.

On Friday, April 24, 1992, in Louisville, Kentucky, the Ford pick-up truck Simmons was operating, was struck in the rear by the automobile driven by Small. By all accounts, the damage to both vehicles was very minor and neither Simmons nor Small required medical assistance at the scene of the accident. However, Simmons testified that over the next few days, his back began to cause him pain. On the Tuesday following the accident, Simmons was seen by Dr. A.T. Embry, a chiropractor. He received several treatments from Dr. Embry, which Simmons testified were helpful, but he continued to experience pain. On May 19, 1992, nearly a month after the accident, Simmons was examined by an orthopaedic specialist, Dr.

Thad Connally, who, according to his records, "[d]iscussed with [Simmons] that he ha[d] no physical findings of a severe injury," but encouraged him to undergo an MRI if his symptoms persisted.

On September 27, 1992, Simmons was involved in another automobile accident in Franklin, Kentucky. Like the April accident, Simmons' truck was hit from behind while he was stopped at an intersection. Again, the damage to his vehicle was minimal and essentially required only that his bumper be replaced. Except for a headache and neck soreness, conditions which resolved themselves, Simmons testified that the second accident did not result in any further injury to his body. On October 1, 1992, Simmons was seen by his family physician, Dr. Larry Maynard. Dr. Maynard took x-rays of Simmons' lumbar spine which he read as normal and prescribed muscle relaxants and anti-inflammatory medication for Simmons' back. Dr. Maynard also ordered an MRI (which was normal), and referred Simmons to Dr. John Guarnaschelli, a neurosurgeon. Dr. Guarnaschelli diagnosed Simmons as having "mild degenerative changes and disc bulging in the low lumbar region." He placed no restrictions on Simmons but advised Simmons to lose weight, participate in physical therapy and perform other exercises. He did not believe Simmons to have a condition requiring surgery.

On April 22, 1994, Simmons filed his complaint against Small in the Jefferson Circuit Court.[1] He sought to recover his medical expenses, future medical expenses, a sum for the permanent impairment to earn money, and past and future pain and suffering. In August 1994, he responded to interrogatories propounded by Small and informed her of the September 1992 accident. His answers also indicated that he had not filed a claim against Robert Smith (Smith), the driver who caused the second accident, or reached any settlement with him. On August 8, 1995, Small took the deposition of Simmons' wife,

---

1. His insurer, State Farm Mutual Automobile Insurance Company (State Farm), intervened to recoup the $6,942.04 it had paid to various medical providers, primarily the chiropractor, Dr. Embry, on Simmons' behalf. That State Farm was entitled to recover these amounts was stipulated to by the intervening defendant, Kentucky Farm Bureau Mutual Insurance Company, subject to the jury's determination that the payments were reasonable, related and necessary as a result of the injuries Simmons received in the accident caused by Small.

Mary Simmons, who testified that she was unaware that her husband had received any money to settle his claim against Smith. On September 15, 1995, Simmons supplemented his interrogatory answers to notify Small that he had settled his claim against Smith in September 1994 for $7,500.

The matter was tried before a jury in April 1996. Prior to trial, Simmons moved the trial court *in limine* to exclude any reference before the jury of his settlement with Smith. Small's attorney objected and argued that evidence of Simmons' settlement was relevant to the issue of Simmons' credibility and that of his wife. The trial court sustained the motion only to the extent that Small was instructed not to reveal the amount of the settlement; however, Small was allowed to question Simmons about the fact he had reached a settlement for the damages he had incurred in the second accident.

In addition to his own testimony and that of Dr. Embry and Dr. Maynard, Simmons presented testimony from two vocational experts and his wife. Small offered the testimony of Dr. Robert Keisler who opined that Simmons' continuing back problems were the result of developmental dysplasia and degenerative disc disease and not the result of an injury. At the conclusion of Small's proof, the trial court directed a verdict against her on the issue of liability. The jury was instructed to award Simmons those items of damages it believed he sustained "directly by reason of the accident."[2] The jury inserted a zero in all categories. Simmons' motion for a new trial was denied.

In this appeal, Simmons argues that the trial court committed reversible error in allowing Small to introduce evidence regarding the settlement of his claim against Smith. He relies on the following reasoning contained in *Orr v. Coleman*, Ky., 455 S.W.2d 59, 61 (1970), a case involving a settlement between the plaintiff and one of two joint tortfeasors:

Knowledge by the jury that one of the claimed tortfeasors had paid off certainly could serve no legitimate purpose and could easily give rise to inferences prejudicial to either side. The amount of the settlement might well tend to suggest the value of the claim and a yardstick for measuring what the nonsettling tortfeasor ought to pay. We see much possible evil and no positive good to be attained through introducing such information to the jurors.

. . .

[W]e are of the firm opinion that neither the fact nor the amount of the settlement should be communicated to the jury that tries the issue of the nonsettling tortfeasor's liability.

Small insists that *Orr, supra,* "offers no guidance" in the instant case because it dealt with joint tortfeasors involved in one accident. However, we do not see any less potential for prejudice in the circumstances in this case where the jury was required to struggle with issues of causation involving two tortfeasors in two separate accidents. The fact that Simmons settled any claim that he had against Smith had no bearing whatsoever on the issues of causation and damages attributable to the accident with which this jury was concerned. As *Orr* suggests, it is not inconceivable that the jury inferred that Smith was primarily liable for Simmons' injuries from the fact that he had settled with and compensated Simmons.[3]

Matters involving settlements are generally not relevant to issues being tried. *Green River Electric Corporation v. Nantz*, Ky. App., 894 S.W.2d 643, 646 (1995). Kentucky Rules of Evidence (KRE) 408 specifically provides that evidence concerning settlements and compromises are not admissible "to prove liability for or invalidity of the claim or its amount." Small points out, however, that this rule does not prohibit the introduction of such evidence for other purposes. The only purpose Small advanced to

---

**2.** The jury was instructed that it could award amounts not to exceed $39,313.79 for mental and physical suffering, $85,004.00 for the permanent impairment of the power to earn money and $7,437.87 for Simmons' reasonable medical expenses.

**3.** We know that the jury was concerned with the settlement because it sent the trial court a note during its deliberations inquiring about the amount of the settlement.

the trial court in response to Simmons' motion *in limine* was that evidence of the settlement with Smith was admissible to impeach Simmons and his wife. It is *our* opinion that the trial court clearly abused its discretion in allowing evidence of settlement for that purpose.

■ Having reviewed the record, we agree with Simmons that Small "manufactured" a credibility issue vis-a-vis Simmons' interrogatory answers. At the time Simmons answered the interrogatories, he had not yet settled with Smith and his answers in this regard were truthful. After he settled with Smith, Simmons supplemented his answers to disclose the fact of settlement and the amount. Small's argument that Simmons was attempting to "obscure" the settlement is simply not supported by the record.

■ Small insists that there was a legitimate purpose in offering the evidence, that of impeaching Mary Simmons' deposition testimony that she was unaware of any payment to her husband for his damages from the September 1992 accident. Since Mary Simmons had endorsed the settlement check prior to her deposition, Small contends the evidence was relevant to show her lack of candor. This argument ignores the collateral facts doctrine. "It is generally recognized that a witness may not be impeached with respect to a matter which is irrelevant and collateral to the issues in the action." *Commonwealth v. Jackson*, Ky., 281 S.W.2d 891, 894 (1955). *See also Eldred v. Commonwealth*, Ky., 906 S.W.2d 694, 705 (1995). Matters that are discoverable are not always admissible at trial. Thus, when there is a credibility question about deposition testimony regarding discoverable facts that are inadmissible at trial, it may require application of the collateral facts doctrine. "A matter is considered collateral if 'the matter itself is not relevant in the litigation to establish a fact of consequence, i.e., not relevant for a purpose other than mere contradiction of the in-court testimony of the witness.' " *United States v. Beauchamp*, 986 F.2d 1, 4 (1st Cir.1993) quoting 1 *McCormack on Evidence* § 45 at 169. The purpose for this rule is "to minimize confusion for the triers of fact by avoiding an unwarranted and endless prolif-

eration of side issues." Lawson, *The Kentucky Evidence Law Handbook*, § 4.10 (3d ed.1993).

With these principles in mind, it is apparent that whether Mary Simmons consciously lied at her deposition, or whether, as she explained to the jury, her husband handled the family finances and she simply was unaware that the check she endorsed was a settlement check, the fact of the settlement was not relevant for any purpose except to contradict Mary Simmons' deposition testimony. Moreover, her deposition testimony, *"standing alone,"* would not indicate bias or interest on her part. *Jackson*, 281 S.W.2d at 894 (emphasis original). The only effect of this evidence was, as the Court in *Orr, supra*, forewarned, to confuse the jury and raise inferences prejudicial to Simmons.

There is no question that the evidence of Simmons' settlement with Smith was prejudicial. This is obvious from the fact of the jury's inquiry of the settlement amount during deliberation. Further, while the trial court instructed Small not to reveal the amount of settlement, her counsel attempted to create an impression that the settlement was for a significant amount. For example, counsel showed Mary Simmons a poster-sized blow-up of the settlement check and asked her whether receiving such a check would not have been a "significant event" that she would have remembered. Counsel made no less than three references regarding the settlement during his closing argument. Accordingly, we hold that this error in the admission of evidence entitles Simmons to a new trial on the issue of damages.

Next, Simmons argues that the trial court erred in failing to grant his motion for a new trial based on inadequate damages. Relying on *Hazelwood v. Beauchamp*, Ky.App., 766 S.W.2d 439 (1989), he argues that the award of $0 "does not bear any reasonable relationship to the evidence of loss suffered." This issue has been rendered moot by our determination that the trial court's error in allowing Small to introduce evidence of the settlement necessitates a new trial.

Accordingly, the judgment of the Jefferson Circuit Court is reversed and the matter is

remanded for a new trial on the issue of damages only.

All concur.